UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Matilda Ann Smith, Trustee for the Heirs and Next of Kin of Jaffort Demont Smith,** | **Court File No.** |
| **Plaintiff,** | |
| vs. | **COMPLAINT WITH JURY DEMAND** |
| **City of St. Paul; Officer John Corcoran, Officer Michael Tschida, Officer Mark Grundhauser and Officer Jeff Korus, all in their individual and official capacities,** | |
| **Defendants.** | |

## INTRODUCTION

For her Complaint, Matilda Ann Smith, in her capacity as Trustee for the heirs and next of kin of Jaffort Demont Smith, states and alleges as follows:

1. By order dated February 10, 2022, Ramsey County District Court appointed Matilda Ann Smith as Trustee for the Heirs and Next of Kin of Jaffort Demont Smith.

2. This is an action for money damages arising out of the May 9, 2016 fatal shooting of Jaffort Demont Smith resulting from a violation of his Constitutional rights by City of St. Paul and on-duty St. Paul Police Officers John Corcoran, Michael Tschida, Mark Grundhauser and Jeff Korus. Plaintiff asserts these officers violated Mr. Smith's well-settled federal civil rights while acting under color of state law.

1

3. Plaintiffs further assert a claim against City of St. Paul under *Monell v. Department of Social Services*, 436 U.S. 658 (1975), and *Canton v. Harris*, 489 U.S. 378 (1989).

## JURISDICTION AND VENUE

4. This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under the Civil Rights Act of 1871, Title 42, §1983 to redress and enjoin the illegal practices alleged in this Complaint. This Court also has supplemental jurisdiction over plaintiff's state law claims pursuant to Title 28, United States Code, §1367.

5. Venue is proper in the District of Minnesota because Defendant City of St. Paul is located in this district, the other individually named defendants are employed in this district, and the incidents in question occurred in this district.

## PARTIES

6. Plaintiff's decedent, Jaffort Demont Smith ("Mr. Smith") was a resident of St. Paul when he died as a result of homicide by St. Paul police on May 9, 2016.

7. Plaintiff Matilda Ann Smith ("Ms. Smith") has been appointed Trustee for the heirs and next of kin of Jaffort Demont Smith for purposes of commencing this action and was at all material times a resident of the State of Minnesota.

8. Defendant Police Officers John Corcoran ("Ofc. Corcoran"), Michael Tschida ("Ofc. Tschida"), Mark Grundhauser ("Ofc. Grundhauser") and Jeff Korus ("Ofc. Korus"), collectively "Defendant Officers," were at all times relevant to this complaint duly appointed and acting officers of the police department of the City of St. Paul, acting

under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of St. Paul.

9. The City of St. Paul ("St. Paul" or "The City"), Minnesota, is a municipal corporation and the public employer of the Defendant Officers. Defendant St. Paul is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials, including the Defendant Officers.

## FACTS

10. Decedent Mr. Smith, age 33, suffered from persistent mental illness including schizophrenia. As a result, he was well-known to the St. Paul Police Department. During numerous arrests, he was known for being courteous and cooperative.

11. Mr. Kruen, a tow truck driver, asked a towing dispatcher to call 911 after seeing Mr. Smith and a woman, BJF, on the street.

12. Ofc. Corcoran responded to dispatch's call.

13. Ofc. Corcoran arrived first on the scene. Two other officers were close behind in a second car.

14. Ofc. Corcoran claimed that he saw a flash, heard a gunshot, and saw BJF fall down.

15. Ofc. Corcoran claimed that he saw Mr. Smith turn his head toward them and fire two or three rounds. However, only one shell casing from Mr. Smith's gun was found in the area.

16. No bullet holes were found in Ofc. Corcoran's police car.

17. Ofc. Corcoran fired two shots at Mr. Smith. Mr. Smith retreated behind a garage.

18. As Mr. Smith moved back and forth behind the garage, Ofc. Corcoran peeked around the corner of the garage and fired three more shots.

19. Ofc. Tschida arrived as Mr. Smith was running toward the garage. He fired one shot as Mr. Smith ran away.

20. When Ofc. Tschida arrived at the garage, he saw Ofc. Corcoran run toward the back of the garage, peek around the corner and open fire on Mr. Smith.

21. It appears that Mr. Smith attempted to defend himself by shooting back twice. Two spent shell casings from his gun were found adjacent to the garage.

22. Ofc. Tschida moved back toward the street and took cover behind a retaining wall and a tree.

23. By the time Ofc. Tschida took cover behind the retaining wall, other officers had arrived and their guns were trained on Mr. Smith.

24. Mr. Smith was face down on the ground with his feet toward the officers and his head away from the officers. He was wounded and he occasionally moved about.

25. Mr. Smith attempted to get to his hands and knees and was yelling something. Several officers were also yelling.

26. Ofc. Tschida saw Mr. Smith's firearm in his left hand and fired a few more shots.

27. Ofc. Korus had a light on his weapon, which he used to illuminate the scene. He saw the firearm in Mr. Smith's left hand and fired three to five rounds.

28. Ofc. Tschida then saw that the slide on Mr. Smith's firearm was back.

29. On information and belief, Ofc. Tschida would have known that the slide being back on Mr. Smith's firearm meant that his weapon had malfunctioned or was out of ammunition. Ofc. Tschida did not communicate this information to any other officer.

30. Although he knew that Mr. Smith's weapon was no longer functional Ofc. Tschida called for a long gun.

31. Long guns allow the user to shoot more accurately from further away and with greater lethality.

32. Ofc. Grundhauser arrived with his shotgun and fired several rounds on Mr. Smith from approximately 50 feet away.

33. At the time Ofc. Grundhauser fired his shotgun, Mr. Smith was face down on the ground, with his feet toward the officers and his head away from the officers.

34. Ofc. Grundhauser shot Mr. Smith through his feet, buttocks, legs, armpit, groin and through his back into his abdomen with pellets from the shotgun. A single buckshot pellet entered his brain.

35. Mr. Smith died on the scene due to exsanguination (bleeding to death) and cerebral laceration due to multiple gunshot wounds.

36. After the incident, police claimed that BJF had been shot in the face by Mr. Smith. However, there was only a bullet fragment in BJF's face that was unable to be matched to any gun.

37. It may well be that BJF was hit with a fragment of one of the initial shots from Ofc. Corcoran's gun or from another officer's weapon.

## History of the St. Paul Police Department

38. Thomas Smith was the St. Paul Police Chief during the period from 2010 through mid-May 2016.

39. During the period from 2010 through mid-May 2016, the St. Paul Police Department ("SPPD") became the deadliest department in the State of Minnesota in terms of police killings of civilians (Stolen Lives Database, Communities United Against Police Brutality).

40. During the period from 2010 through mid-May 2016, the SPPD was the 19th deadliest police department in the country with a rate of police killings per 1M population of 5.4. By contrast, the Minneapolis Police Department had a rate of police killings per 1M population of 3.0. In fact, SPPD was deadlier in terms of rates of police killings by population than the Los Angeles, Houston, New Orleans and New York Police Departments (Mapping Police Violence).

41. Of the 17 people killed by the SPPD during the period from 2010 through mid-May 2016, 14 (82%) were people of color (Mapping Police Violence). People of color make up 33.3% of St. Paul's population (Wikipedia).

42. Despite high rates of use of deadly force, not a single SPPD officer who used deadly force during the period from 2010 through mid-May 2016 was disciplined or prosecuted for that use of deadly force (Police Complaint Database, Communities United Against Police Brutality).

43. Upon information and belief, SPPD investigations into deadly force incidents by its officers were designed to absolve officers who engaged in deadly force of accountability for their actions.

44. SPPD has failed to retain documentation, including video evidence, which would have allowed for independent investigation into deadly force incidents.

45. During that period, St. Paul's civilian complaint adjudication agency, the Police Civilian Internal Affairs Review Commission sustained approximately 3% of civilian complaints (Police Complaint Database, Communities United Against Police Brutality) compared to the national average of 6% for civilian oversight bodies (*Civilian Oversight of Police in Major Cities*, US Department of Justice, Community Oriented Policing Services).

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – FOURTH AND/OR FOURTEENTH AMENDMENT EXCESSIVE FORCE AGAINST DEFENDANT OFFICERS CORCORAN, TSCHIDA, GRUNDHAUSER AND KORUS

46. Plaintiff restates and realleges the foregoing paragraphs as though set forth here in full.

47. Based on the factual allegations above, Defendant Officers Corcoran, Tschida, Grundhauser and Korus acting under color of law, violated Mr. Smith's Fourth and Fourteenth Amendment rights through their use of excessive force.

48. Mr. Smith was not a credible threat when Ofc. Corcoran opened fire on him when he and BJF were walking in the street.

49. Mr. Smith was not a credible threat when Ofc. Tschida fired on him as he ran toward the garage.

50. Mr. Smith was not a credible threat when Ofc. Tschida knew that Mr. Smith's gun was non-functional but called for a long gun anyway.

51. Mr. Smith was not a credible threat when Ofc. Grundhauser used his long gun to repeatedly shoot Mr. Smith as he laid face down in the driveway.

52. Mr. Smith was not a credible threat when Ofc. Korus joined in shooting Mr. Smith as he laid face down in the driveway.

53. In spite of the lack of a credible threat to their safety, Ofc. Corcoran, Tschida, Grundhauser and Korus shot Mr. Smith repeatedly, resulting in his death.

54. The use of force by Ofc. Corcoran, Tschida, Grundhauser and Korus was excessive and violated Mr. Smith's right to be free from unreasonable seizure in violation of the Fourth Amendment to the Constitution.

55. Plaintiff has suffered pecuniary loss as a result of Mr. Smith's death.

### COUNT 2: WRONGFUL DEATH AGAINST DEFENDANT OFFICERS CORCORAN, TSCHIDA, GRUNDHAUSER AND KORUS

56. Plaintiff restates and realleges the foregoing paragraphs as though set forth here in full.

57. By reason of Defendants' unlawful conduct described above, Mr. Smith lost his life.

58. Plaintiff is entitled to recover all damages suffered as a result of Mr. Smith's wrongful death.

### COUNT 3: NEGLIGENT SUPERVISION AGAINST DEFENDANT CITY OF ST. PAUL

59. Plaintiff restates and realleges the foregoing paragraphs as though set forth here in full.

60. Defendants Corcoran, Tschida, Grundhauser and Korus were acting as police officers for the City of St. Paul.

61. Defendants Corcoran, Tschida, Grundhauser and Korus were using equipment and uniforms issued by the City of St. Paul.

62. Defendants were supervised by the Defendant City of St. Paul.

63. On information and belief, Defendants Corcoran, Tschida, Grundhauser and Korus had received quarterly instruction on firearms marksmanship.

64. On information and belief, the police academy training on use of deadly force focused on a proactive use of force and on officer safety above citizen safety.

65. Sending armed officers to interact with citizens on the basis of this training failed a duty of ordinary care.

66. As a result of Defendant City of St. Paul's negligent supervision, Mr. Smith was shot and killed and his family was injured by his loss.

### COUNT 4: 42 U.S.C. §1983–MONELL LIABILITY AGAINST THE CITY OF ST. PAUL

67. Plaintiff restates and realleges the foregoing paragraphs as though set forth here in full.

68. Defendant City of St. Paul developed and maintained policies and/or customs, and/or practices through their training regimes, predisposing officers of the police department to use deadly force when not appropriate or legal.

69. Defendant City of St. Paul developed and maintained policies and/or customs, and/or practices through their training regimes, predisposing officers of the police department to use excessive amounts of deadly force.

70. Defendant City of St. Paul cultivated and maintained policies and/or customs, and/or practices through their training regimes and culture predisposing officers to fire their weapons inappropriately when other officers fired.

71. These policies, customs, practices and lack of training were the cause of the violations of Mr. Smith's Constitutional rights.

72. As a result of these Constitutional violations, Mr. Smith and his heirs and next of kin suffered damages as aforesaid.

## RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff's judgment against Defendants, finding that Defendants violated Plaintiff's federally protected Constitutional and statutory rights as well as Plaintiff's common law rights under Minnesota state law;

b. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

c. Award of punitive damages to Plaintiff, pursuant to *Smith v. Wade*, 461 U.S. 30 (1983);

d. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

Date: May 6, 2022              By /s/ Paul J. Bosman
                                        Paul J. Bosman, #0388865
                                        2136 Ford Parkway, #5328
                                        St. Paul, MN 55116
                                        Tel: (651) 485-7046
                                        paul.bosman@gmail.com

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorneys' and witness fees may be awarded pursuant to Minn. Stat. § 549.211, to the opposing party.

Date: May 6, 2022              By /s/ Paul J. Bosman
                                        Paul J. Bosman